```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
CLAUDETTE BROOKS,                              :
                                               :
                         Plaintiff,            :
                                               :                **MEMORANDUM AND OPINION**
         -against-                             :                    10-CV-4945 (DLI)
                                               :
MICHAEL J. ASTRUE,                             :
Commissioner of Social Security,               :
                                               :
                         Defendant.            :
-------------------------------------------------------------------x
```
**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Claudette Brooks filed an application for disability insurance benefits ("DIB") under the Social Security Act (the "Act") on December 6, 2006, alleging a disability that began on November 3, 2007. Plaintiff's application was denied initially and on reconsideration. Plaintiff appeared with counsel and testified at a hearing held before an Administrative Law Judge ("ALJ") on November 14, 2009. By a decision dated December 10, 2009, the ALJ concluded that plaintiff was not disabled within the meaning of the Act. On September 23, 2010, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review.

Plaintiff filed the instant appeal seeking judicial review of the denial of benefits, pursuant to 42 U.S.C. § 405(g). The Commissioner now moves for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), seeking affirmation of the denial of benefits. (*See* Gov't Mot. for Judg., Doc. Entry No. 14.) Plaintiff cross-moves for judgment on the pleadings, seeking reversal of the Commissioner's decision, or alternatively, remand. Plaintiff contends that the ALJ failed to meet his burden of showing that plaintiff could perform work that exists in significant numbers in the national economy. (*See* Pl. Mot. for Judg., Doc. Entry No. 16.)

For the reasons set forth more fully below, the Commissioner's motion is granted, and plaintiff's motion is denied. The instant action is dismissed with prejudice.

## BACKGROUND[1]

### A. Non-medical and Testimonial Evidence

On November 14, 2009, plaintiff appeared with counsel and testified before ALJ Richard L. DeSteno. (R. 25-48.)[2] Plaintiff testified that she was born on August 19, 1958 in Jamaica and became a citizen of the United States ten years ago. (R. 29-30.) Plaintiff worked until September 1, 2006 as a Certified Nurse's Aide. (R. 31, 134.) On November 3, 2007,[3] plaintiff suffered an extensive burn to her right arm and hand during a cooking accident at home. (R. 32-33.) Her right hand is her dominant hand. (R. 36.) Plaintiff was taken to the hospital in an ambulance and as of the date of her hearing, she had residual arm and finger pain. (R. 35.) Occasionally, her hand and arm would tighten up incapacitating her for up to two hours. (R. 35-36.) She is unable to write more than a half-page with a pen and has some difficulty using a keyboard. (R. 43.) Her husband does the cooking, cleaning, and shopping for their household. (R. 36-37.) She reported no problems with standing, walking, or sitting. (R. 37.) Recently, a neurologist diagnosed her right arm and hand with carpal tunnel syndrome. (R. 43.)

On March 6, 2008, plaintiff was riding as a passenger in a friend's vehicle when their vehicle was hit from behind by a van. (R. 38.) She was taken to the hospital and treated for neck

---

[1] There is a cursory mention of plaintiff filing an application for Supplemental Security Insurance ("SSI") in addition to her application for DIB. Indeed, the ALJ denied both applications. However, it appears that plaintiff's appeal is limited to the denial of DIB. *See* Pl. Mem. at 1 ("This is an action for judicial review of a determination . . . that the plaintiff is not disabled and is therefore not entitled to disability insurance benefits under Title II . . . ."). Regardless of whether plaintiff seeks to appeal the denial of DIB alone or DIB and SSI in combination, the standards by which an ALJ determines whether an individual is disabled and, thus, qualifies for either or both benefits is the same. Accordingly, the Court's affirmance of the ALJ's denial of DIB also operates as an affirmance of the ALJ's denial of SSI, to the extent that SSI is at issue in this appeal.
[2] "R." refers to the record in this case, which was submitted in conjunction with the government's motion.
[3] Initially there was some uncertainty as to the alleged onset date. However, plaintiff and her counsel stated unequivocally that November 3, 2007, the date of her burn injury, is the alleged onset date. (R. 34.)

and back injuries. (R. 38-39.) Plaintiff attends therapy and has treated with pain management techniques, such as epidural injections. (R. 39.) She has never had surgery, nor discussed it with her treating physicians. (*Id*.) After the accident, she experienced difficulty with sitting, standing, and walking. (*Id*.) She clarified that she cannot sit or stand for more than two hours at a time and spends most of her day lying down due to back pain. (R.42.) She passes time by reading, taking short walks, and occasionally drives her car for basic errands such as trips to the post office or grocery store. (R. 40-41.)

She takes medications for high blood pressure and diabetes. (R. 42, 134.) Both of these conditions are unrelated to her two prior injuries. Her medical records indicate that she had several surgeries including a hysterectomy, four surgeries for ovarian cysts, and two surgeries to her bowels for obstructions. (R. 255.)

**B. Medical Evidence**

**1. Medical Evidence Prior to Alleged Onset Date of November 3, 2007**

Plaintiff treated with Dr. Thomas Alapatt from August 2004 to March 2005 for uncontrolled high blood pressure. (R. 186-91.) On October 16, 2007, plaintiff's blood pressure was 140/98 and she was diagnosed with uncontrolled hypertension, anemia, hyperlipidemia, and carpel tunnel syndrome. (R. 186.) On October 29, 2007, plaintiff complained of pain in both of her shoulders and numbness in her fingers. (R. 307-10.) She underwent electromyogram ("EMG") and nerve conduction velocity ("NCV") tests, which suggested moderate right carpel tunnel syndrome. (R. 308.)

**2. Medical Evidence on or after Alleged Onset Date of November 3, 2007**

On November 3, 2007, plaintiff was taken via ambulance to the Saint Barnabas Medical Center emergency department with second degree burns to her right forearm, hand, and fingers

caused by spilling hot cooking oil. (R. 202, 172-75.) Plaintiff was treated with a tetanus vaccine and her wounds were dressed with bandages and an application of one percent silver sulfadiazine. (*Id.*) On November 7, 2007, the Burn Surgeons of Saint Barnabas evaluated plaintiff's injuries. (R. 231.) The Burn Surgeons concluded that she suffered from second degree and possibly third degree burns and redressed her wounds. (*Id.*) On November 9, 2007, she returned to the Burn Surgeons complaining of continued pain and decreased range of mobility. (R. 230.) The treating physician indicated that her disability was expected to last two months. (*Id.*) On November 12, 2007, she began occupational therapy and continued with follow-up appointments with the Burn Surgeons. (R. 206-11, 212-14, 216-17, 226-28.) On December 4, 2007, the Burn Surgeons assessed plaintiff's wounds and determined that her disability would last three months. (R. 225.) Plaintiff's activities were restricted as she was required to keep her arm elevated while sitting or lying down. (R. 224.)

On January 11, 2008, plaintiff returned to the Burn Surgeons. (R. 219.) Her condition had improved and it was anticipated that she would return to work in four weeks. (*Id.*) She continued to visit the Burn Surgeons regularly.

On March 6, 2008, plaintiff suffered back and neck injuries during a motor vehicle accident. On May 12, 2008, she saw Dr. Frances M. Rispoli, complaining of low back pain. (R. 316-18.) She described herself as being in good health, other than experiencing low back pain, and she denied having any pre-existing conditions, including neurological conditions. (R. 316.) Dr. Rispoli diagnosed her with vertebral derangement due to an acceleration/deceleration injury, post-traumatic myofascitis, lumbago, and myospasm. (R. 317.) He recommended chiropractic care and restricting daily activities to a tolerable limit. (*Id.*) On September 24, 2008, plaintiff saw Dr. Jidong Sun, complaining of continued back pain. (R. 312-15.) Dr. Sun indicated that a

MRI revealed bulging discs in her cervical and lumbar spinal regions. (R. 313.) He diagnosed her with vertebral derangement due to an acceleration/deceleration injury, post-traumatic myofascitis, bilateral carpel tunnel syndrome, bilateral ulnar neuropathy, cervical disc syndrome, right radial neuropathy, myospasm, and lumbago. (R. 314.) He recommended continued chiropractic treatments and that she limit her daily activities to a tolerable level. (R. 315.) On November 5, 2008, plaintiff saw Dr. Solomon Halioua, because her lower back pain continued. (R. 326-29.) He recommended a series of three epidural injections. (R. 328.) Dr. Halioua performed the injections on December 15, 2008, January 13, 2009, and January 26, 2009, with no complications. (R. 322-25.) At her follow-up appointment with Dr. Halioua, plaintiff reported improvement. (R. 320-21.)

Plaintiff visited Dr. Walter Matkiwsky, a family physician, seeking treatment for various conditions unrelated to her burn and motor vehicle related injuries. (R. 278, 280.) On November 3, 2009, Dr. Matkiwsky completed a medical source statement indicating that plaintiff was limited to sitting no more than one hour, and standing and walking no more than two hours in an eight-hour work day, and that plaintiff needed to rest five hours during an eight-hour work day. (R. 331-33.) Additionally, plaintiff could lift and carry up to five pounds occasionally, reach handle, and finger constantly with her left hand and arm, and occasionally with her right hand and arm. (R. 332-33.) He indicated that these restrictions existed since at least September 1, 2006. (R. 333.)

Plaintiff also visited Dr. Nizar Souayah, a neurologist, for her ongoing right arm and hand pain on a number of occasions, beginning on September 11, 2009. (R. 289-90, 284, 281-83.) Dr. Souayah also completed a medical source statement, which indicated that plaintiff was limited to sitting, standing, and walking, no more than two hours during an eight-hour work day,

and that plaintiff would need to lie in a reclined position for four hours during the work day. (R. 281-82.) He indicated that plaintiff could lift and carry up to ten pounds occasionally, reach with her right hand and arm occasionally, and her left hand and arm frequently. (R. 283.) He, too, indicated that these restrictions existed since at least September 1, 2006. (*Id*.)

### 3. Consultative Examinations

On February 28, 2008, plaintiff reported to Dr. Alexander Hoffman for a consultative examination. (R. 255-61.) Dr. Hoffman concluded that plaintiff "sustained a severe burn of the right hand and forearm" and "is still recovering." (R. 257.) Furthermore, he concluded that "[s]he has decreased grip strength in the affected hand" but "[n]o active infection." (*Id*.)

On March 6, 2008, Dr. Michael Pirone, a state medical consultant reviewed plaintiff's medical records and evaluated her residual functional capacity. (R. 262-69.) Dr. Pirone opined that plaintiff retained the ability to lift and carry ten pounds frequently and twenty pounds occasionally; stand, walk, and sit each for a total of six hours in an eight-hour workday; and perform unlimited pushing and pulling within her ability to lift and carry. (R. 263.) He also opined that right upper extremity handling and fingering was limited to an occasional basis; reaching and feeling were unlimited; and there were no postural, visual, communicative, or environmental limitations. (R. 264-66.)

## C. Testimony from Vocational Expert

Pat Green, a vocation expert ("VE"), attended plaintiff's hearing and testified. (R. 44-48.) In determining whether there were any positions in the local and national economies that plaintiff could perform, the ALJ asked the VE about two hypothetical claimants with differing RFCs, both of whom had the same background as the plaintiff (born on August 19, 1958, completed eleventh grade, and previously worked as a certified nurse's aide). The first claimant

could handle "lifting and carrying objects weighing up to 20 pounds, primarily with the left, non-dominant arm with some assistance from the right arm for support; frequently lifting and carrying up to 10 pounds in the same way; sitting, standing, and walking up to six hours in an eight-hour day; pushing and pulling left arm and bilateral leg controls; not requiring extensive, fine manipulation or fingering repeatedly with the . . . right hand." (R. 44.) This individual also had the ability to engage in "fine manipulation . . . occasionally . . . but not extensively throughout the day" with respect to the right hand and no such limitation with respect to the left hand. (R. 45.) The VE testified that a hypothetical claimant with these restrictions could find work in the local and national economies as a companion,[4] a hand-packager, an information clerk, a receptionist, or a telephone solicitor. (R. 45-46.)

The second hypothetical claimant had more limited abilities with respect to "sitting, standing, and walking," in particular, "the sitting would be limited to two to three hours spread throughout the day" . . . with no more than "a half hour at a time" and "[t]he standing and walking would be limited to 15 to 30 minutes at a time up to two hours a day." (R. 47.) Additionally, this individual's "lifting and carrying would be limited to five pounds, primarily with the left arm" and "there would be difficulty with strictly adhering to a work schedule." (*Id*.) The VE testified that these increased work restrictions "would eliminate all those jobs" mentioned above, and furthermore, that "there are no jobs" an individual with these restrictions could perform. (*Id*.)

## DISCUSSION

**A.      Standard of Review**

---

[4]      A "companion" works alongside another individual, assisting that individual with sedentary tasks. (R. 45.) This position does not involve the level of exertion required of nurse's aides. (*Id*.)

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F. 3d 496, 504 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.,* 685 F. 2d 751, 755 (2d Cir. 1982) (internal quotations omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand to the Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F. 3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJs, unlike judges, have a duty to "affirmatively develop the record in light

of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F. 3d 770, 774 (2d Cir. 1999).

**B.    Disability Claims**

To receive disability benefits, claimants must be "disabled" within the meaning of the Act. *See* 42 U.S.C. § 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques," as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F. 2d 638, 642 (2d Cir. 1983). ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Social Security Act as set forth in 20 C.F.R. § 404.1520. If at any step, the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. § 404.1520(b). Second, the ALJ considers whether the claimant has a "severe impairment," without reference to age, education or work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental "ability to conduct basic work activities." 20 C.F.R. § 404.1520(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed in Appendix 1.[5] *See* 20 C.F.R. § 404.1520(d).

---

[5]    20 C.F.R. pt. 404, subpt. P, app. 1.

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's "residual functional capacity" ("RFC") in steps four and five. 20 C.F.R. § 404.1520(e). In the fourth step, the claimant is not disabled if he or she is able to perform "past relevant work." 20 C.F.R. § 404.1520(e). Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(f). At this fifth step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work. *See Draegert v. Barnhart*, 311 F. 3d 468, 472 (2d Cir. 2002) (citing *Carroll*, 705 F. 2d at 642).

**C. ALJ's Decision**

On December 10, 2009, the ALJ issued his decision denying plaintiff's claim. (R. 7-20.) At the first step, the ALJ found that plaintiff had not worked since her alleged onset date, November 3, 2007. (R. 12.) At the second step, the ALJ concluded that plaintiff suffered from the following severe impairments: a burn to the right arm and hand, right carpal tunnel syndrome, right-arm polyneuropathy, arterial disease of the legs, and since a motor vehicle accident in March 2008, degenerative disc disease. (*Id.*) At the third step, the ALJ concluded that these impairments in combination or individually did not meet or equal a listed impairment. (R. 13.) At the fourth step, the ALJ determined that plaintiff was not able to perform her past relevant work as a certified nurse's assistant. (R. 17.) The parties do not dispute these findings.

At the fifth step, the ALJ concluded that plaintiff retained the RFC to perform light work with certain manipulative limitations. (R. 14-17.) Based on the plaintiff's age, education, work experience, RFC, and acquired transferable skills, the ALJ concluded that plaintiff could work as a companion, an information clerk, a receptionist, a referral and information aide, a hand

packager, or a telephone solicitor. (R. 18-19.) It is the ALJ's findings in support of this conclusion that are at issue in the instant action.

## D. Application

### 1. ALJ's Decision Applied Correct Legal Principles and is Supported by Substantial Evidence

The ALJ's detailed and thorough decision applied the correct legal principles and is supported by substantial evidence. To determine plaintiff's RFC, the ALJ reviewed medical evidence submitted before and after the hearing. (R. 14-17.) The ALJ relied upon Dr. Pirone's evaluation of plaintiff's RFC,[6] and adopted Dr. Pirone's assessment. In his March 2008 report, Dr. Pirone opined that plaintiff retained the ability to lift and carry ten pounds frequently and twenty pounds occasionally; stand, walk, and sit each for a total of six hours in an eight-hour workday; and perform unlimited pushing and pulling with within her ability to lift and carry. (R. 263.) He also opined that right upper extremity handling and fingering was limited to an occasional basis; reaching and feeling were unlimited; and there were no postural, visual, communicative, or environmental limitations. (R. 264-66.)

These findings are supported by the record. The Burn Surgeons who initially treated plaintiff for her burn injury anticipated that plaintiff would be disabled no longer than three months. (R. 224-25, 230.) In January 2008, the Burn Surgeons indicated that plaintiff would be able to return to work within four weeks. (R. 219.) By January 2008, plaintiff reported that she no longer experienced pain in her hand and arm, but that she did have decreased mobility. (R. 218, 256.) Furthermore, in May 2008, plaintiff stated to Dr. Rispoli that until her motor vehicle

---

[6] As noted above, Dr. Pirone is a state agency medical consultant. ALJs are entitled to rely on the opinions of state agency medical consultants, who are highly qualified physicians and experts in the evaluation of medical issues arising in disability cases. *See* 20 C.F.R. § 404.1527(f)(2).

11

accident, she "was in her usual state of good health and capable of living on an equal basis with others her age." (R. 316.) With respect to her back injury, by February 25, 2009, plaintiff reported that the epidural injections gave her near complete relief of her back pain and lower extremity radicular symptoms. (R. 320.) Plaintiff's injury did not require any surgical intervention, nor is such treatment anticipated, and plaintiff denied taking any pain medications for the injury. (R. 39, 42.) Plaintiff alleges that she is completely disabled; however, the medical evidence submitted by her treating physicians indicates otherwise, and subjective allegations of pain on their own, are insufficient to establish a disability. *See* 20 C.F.R. § 404.1529(a).

The ALJ did not err in declining to give controlling weight to the RFC assessments of Drs. Matkiwsky and Souayah, two treating physicians who first evaluated plaintiff in late September 2009. A treating source's medical opinion regarding the nature and severity of an impairment is given controlling weight when supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Schisler v. Sullivan*, 3 F. 3d 563, 567 (2d Cir. 1993) (*citing* 20 C.F.R. 404.1527(d)). When a treating source's opinion is not given controlling weight, the proper weight accorded depends upon several factors, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark v. Comm'r of Social Security*, 143 F. 3d 115, 118 (2d Cir. 1998) (citing 20 C.F.R. § 404.1527(d)). Additionally, the ALJ must always "give good reasons" in her decision for the weight accorded to a treating source's medical opinion. *Id.* There are, however, certain decisions reserved to the Commissioner. Such decisions include the determination that a

claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(e)(1). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F. 3d 128, 133 (2d Cir. 1999).

Plaintiff visited Dr. Matkiwsky, a family physician, in May and August 2009, for conditions unrelated to her injuries such as high blood pressure, allergic rhinitis, and insomnia. (R. 278, 280.) On November 3, 2009, Dr. Matkiwsky completed a medical source statement, opining that plaintiff had an extremely limited RFC. (R. 331-33.) His findings contradict the medical records of the physicians who treated plaintiff contemporaneously for her burn and motor vehicle injuries. Moreover, during plaintiff's two visits to this non-specialist prior to the issuance of the medical source statement, plaintiff sought treatment for unrelated health conditions and there is no indication that he treated her for any symptoms related to her burn and motor vehicle injuries. Finally, it is unclear why and on what authority Dr. Matkiwsky determined that plaintiff's work restrictions related back to September 1, 2006, when the first alleged disabling injury, the cooking oil accident, occurred on November 3, 2007. (R. 331.) Accordingly, the ALJ did not err in declining to give controlling weight to Dr. Matkiwsky's RFC assessment.

Plaintiff also visited Dr. Nizar Souayah, a neurologist, for her alleged ongoing right arm and hand pain on a number of occasions, beginning on September 11, 2009. (R. 289-90, 284, 281-83.) Dr. Souayah completed a medical source statement, also opining that plaintiff had an extremely limited RFC. (R. 281-83.) He, too, for unexplained reasons, indicated that these restrictions pre-dated her date of injury, November 3, 2007. (R. 283.) Much like Dr.

13

Matkiwsky's assessment, this assessment contradicts the record and is not supported by any medical evidence. Accordingly, the ALJ did not err in declining to give controlling weight to Dr. Souayah's RFC assessment.

### 2. Plaintiff's Arguments on Appeal

Plaintiff moved for judgment on the pleadings, contending that the ALJ failed to properly develop the record as he failed to (1) identify with specificity any transferable skills plaintiff gained from her past relevant work; (2) treat plaintiff, a 49-year-old, as a "borderline claimant; (3) assess her education background properly; and (4) identify the appropriate fine manipulation skills for the VE, such that the VE would be able to credibly assess her abilities. None of these contentions provide a basis for reversal or remand.

First, for individuals such as plaintiff, who are closely approaching advanced age, with a limited education and capable of light work, the transferability of skills is not relevant, as long as the individual is literate and able to communicate in English. *See* 20 C.F.R., Pt. 404, subpt. P, Appx. 2 § 202.00(d); Rule 202.10 of the Medical Vocational Guidelines. The record indicates that plaintiff is able to read, write, speak, and understand English. (R. 133.) Also, the VE indicated that plaintiff could perform the unskilled position of hand packager. (R. 45.) Furthermore, Rule 202.10 applies to individuals who are older than plaintiff. Thus, the ALJ's findings with respect to her transferrable skills, age, and education background do not merit reversal or remand. Second, contrary to plaintiff's arguments, it is clear from the record that the VE understood plaintiff's restrictions with respect to fine manipulation and assessed her ability to work with those restrictions appropriately. (R. 45-47.) Thus, the ALJ did not err in relying upon the VE's employment assessment as the assessment was not based upon flawed information or misunderstandings regarding plaintiff's work restrictions.

## CONCLUSION

For the reasons set forth above, the Commissioner's motion is granted. Plaintiff's cross-motion is denied and the instant action is dismissed with prejudice.

SO ORDERED

DATED:   Brooklyn, New York
         May 17, 2012

                                               _____/s/_____
                                                  DORA L. IRIZARRY
                                                United States District Judge